UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:
D.M., et al.,                                              :
                                   Plaintiff(s),   :
                                                          :
                         -against-                        :
                                                          :
CITY SCHOOL DISTRICT OF THE CITY OF    :
NEW YORK,                                             :
                                   Defendant.    :
------------------------------------------------------------- X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED: 01/26/2016               │
└─────────────────────────────────────┘
```

        15 Civ. 1619 (LGS)


        OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs D.M. and R.M., individually and on behalf of their daughter C.M., bring this

action against the New York City Department of Education ("DOE") pursuant to the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Plaintiffs seek review of the

November 7, 2014, decision of the New York State Review Officer ("SRO Decision") reversing

the June 28, 2012, decision of the Impartial Hearing Officer ("IHO Decision"), which found that

the DOE had failed to provide a free and appropriate education ("FAPE") to C.M. during the

2011-2012 school year.  The parties have cross-moved for summary judgment.  For the reasons

below, the DOE's motion is denied and Plaintiffs' motion is granted.

**I.     STATUTORY FRAMEWORK**

        The IDEA mandates that states receiving federal special education funding provide

disabled children with a FAPE.  20 U.S.C. § 1412(a)(1)(A); *M.W. ex rel. S.W. v. N.Y.C. Dep't of*

*Educ.*, 725 F.3d 131, 135 (2d Cir. 2013).  "To ensure that qualifying children receive a FAPE, a

school district must create an individualized education program ('IEP') for each such child."

*R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).  An IEP is a written statement

that "'describes the specially designed instruction and services that will enable the child to meet'

stated educational objectives and is reasonably calculated to give educational benefits to the child." *M.W.*, 725 F.3d at 135 (quoting *R.E.*, 694 F.3d at 175); *see also* 20 U.S.C. § 1414(d).

New York delegates the annual development of an IEP to a local Committee on Special Education ("CSE"). *See* N.Y. Educ. Law § 4402(1)(b)(1). At a minimum, a CSE must be composed of the student's parent(s); a special education teacher; a regular education teacher if the student participates in a regular education program; a school psychologist; a school district representative; an individual who can interpret the instructional implications of evaluation results; a school physician; and a parent of another student with a disability. *See* Educ. § 4402(1)(b)(1)(a). "The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E.*, 694 F.3d at 175 (citation omitted).

If a parent believes that the DOE has failed to provide a FAPE to his or her child, the parent may "unilaterally place their child in a private school at their own financial risk and seek tuition reimbursement." *M.W.*, 725 F.3d at 135 (citing *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 9-10, 16 (1993)). To seek reimbursement, the parent must file a due process complaint with the DOE, which triggers administrative proceedings beginning with a hearing before an Impartial Hearing Officer ("IHO"). *See id.* (citing 20 U.S.C. §§ 1415(b)(6), (f); N.Y. Educ. Law § 4401(1)). The IHO hearing is governed by the three-part *Burlington/Carter* test, as construed by New York Education Law § 4404(l)(c): "(1) the DOE must establish that the student's IEP actually provided a FAPE; should the DOE fail to meet that burden, the parents are entitled to reimbursement if (2) they establish that their unilateral placement was appropriate and (3) the equities favor them." *M.W.*, 725 F.3d at 135 (footnote and citations omitted).

An IHO's decision may be appealed to a State Review Officer ("SRO"). *See* Educ. § 4402(2); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 225 (2d Cir. 2012). The SRO "shall

review and may modify . . . any determination of the impartial hearing officer . . . ." Educ. §

4404(2).  An SRO's decision is the final administrative decision, but an aggrieved party may

seek review of the decision by commencing an action in federal district court.  20 U.S.C. §

1415(i)(2)(A); *M.W.*, 725 F.3d at 135-36.

## II.    BACKGROUND

### A.  C.M.'s Educational History

C.M. was born in January 2003, and was eight years old at the beginning of the 2011-

2012 school year.  The DOE classified her as a student with a speech or language impairment at

the beginning of the 2011-2012 school year, and that classification is not disputed.  The DOE

described her as a "medically healthy youngster" with low muscle tone, poor upper body trunk

stability, distractibility, and delayed fine motor skills, with language deficits, anxiety, and

distractibility, who takes medication to improve her attention skills.  C.M. began attending the

Aaron School ("Aaron"), a private school, in 2008 for kindergarten and continued there through

second grade.

Plaintiffs signed a contract with Aaron on January 28, 2011, for C.M.'s re-enrollment for

the 2011-2012 school year, the school year presently at issue.  The tuition for that school year

was $47,950, which Plaintiffs paid to Aaron.  C.M.'s IEPs for the 2012-2013, 2013-2014, and

2014-2015 school years recommended placement in a non-public school and are not at issue.

### B.  C.M.'s Individualized Education Program for 2011-2012

On February 11, 2011, a CSE convened for the development of C.M.'s IEP for the 2011-

2012 school year, as is done annually.  The CSE consisted of Plaintiffs; a DOE social worker; a

DOE special education teacher who also served as District Representative; a school psychologist;

a parent member; and C.M.'s teacher from Aaron.  In developing C.M.'s IEP, the CSE reviewed

and relied upon several documents and reports, including an August, 2008 Psychological

Evaluation (the "2008 P-E"); a July, 2010 Occupational Therapy Evaluation; a 2010-2011 Aaron

Fall Report; a 2010-2011 Aaron Mid-Year Report; Aaron's Literacy and Math Goals for C.M.

for 2010-2011; Aaron's October, 2010 Special Learning Targets and Occupational Therapy

Plans for C.M.; and C.M.'s IEP from the prior year.  The CSE also considered oral input from

Plaintiffs and the Aaron staff.

The IEP made findings about, and identified needs with respect to, C.M.'s physical,

academic, social and emotional development, and set 22 annual goals for her.  The IEP

recommended that C.M. be enrolled year-round in a ten-month program in a 12:1:1 special class

-- i.e., a class with twelve students, one teacher, and one classroom paraprofessional -- in a

community school.  The IEP also recommended that every week C.M. receive one 30-minute

individual session and one 30-minute group session of occupational therapy, one 30-minute

individual session and two 30-minute group sessions of speech-language therapy, and one 30-

minute group session of counseling.  During the CSE meeting, Plaintiff D.M. voiced his

concerns about the recommended 12:1:1 special class program, which the team fully discussed.

### C. Rejection of the Recommended School Placement

The IEP stated that C.M. should be placed in a "community school," but did not include a

specific school placement.  In a final notice of recommendation dated July 11, 2011, the DOE

notified Plaintiffs that C.M. would be placed at P.S. 198 Isador E. Ida Straus ("P.S. 198").

In a letter to the DOE dated July 19, 2011, Plaintiff D.M. rejected the recommended

placement and stated that his efforts to visit P.S. 198 were unsuccessful, and that he would

schedule a visit in September.  He also stated that, based on what he knew about P.S. 198, the

placement was inappropriate because there was only one special education teacher in each classroom.

### i.   Due Process Complaint and IHO Proceedings

On October 13, 2011, Plaintiffs filed a due process complaint, alleging that the DOE had failed to provide a FAPE to C.M. and raising both procedural and substantive challenges.  These included that: (i) the CSE failed to rely on necessary evaluations to establish C.M.'s present levels of performance or to support the change in her program from the prior year; (ii) the CSE failed to appropriately develop proper annual goals and short-term objectives for C.M.; (iii) the CSE failed to place C.M in a smaller class with two special educators in the classroom; and (iv) lunch and recess at P.S. 198 would have caused C.M. to feel anxious and distracted.  Plaintiffs sought relief in the form of reimbursement for tuition at the Aaron School for the 2011-2012 school year.

An IHO conducted a three-day hearing between February 6 and May 14, 2012.  Eight witnesses testified, including individuals who had served on the CSE that drafted C.M.'s IEP. The DOE presented testimony from two witnesses: the DOE social worker who had attended the CSE meeting; and a third and fourth grade special education teacher from P.S. 198 where C.M. would have been enrolled.  Plaintiffs presented six witnesses: a psychologist, three Aaron representatives and Plaintiffs.

On June 28, 2012, the IHO issued a decision and found, pursuant to the *Burlington/Carter* test, that (i) the DOE failed to demonstrate the appropriateness of the 2011 IEP for C.M.; (ii) C.M.'s placement at the Aaron School was appropriate to meet her educational needs; and (iii) equitable considerations supported Plaintiffs' tuition reimbursement claim. Specifically with respect to the first prong, which requires the DOE to establish that it provided a

FAPE, the IHO determined that the CSE had failed to consider adequate and appropriate evaluative information -- because an updated evaluation was needed to ascertain whether the recommended change to C.M.'s program from the prior year was adequately addressed -- thereby causing a loss of educational opportunity for C.M.  It also determined that the recommendation of a 12:1:1 class and the recommendation of a community school were inappropriate and inadequate to address C.M.'s needs.  The IHO ordered the DOE to pay not more than $47,950 to Plaintiffs to reimburse them for the Aaron School tuition.

      **ii.**       **SRO Appeal and Determination**

The DOE appealed the IHO Decision, arguing that pursuant to the *Burlington/Carter* test, (i) it offered C.M. a FAPE; (ii) Plaintiffs failed to demonstrate that Aaron was appropriate for C.M.; and (iii) equitable considerations precluded relief.  With respect to the first prong, the DOE argued that the CSE relied on sufficient and adequate evaluative information to develop the 2011-2012 IEP, and that the 2011-2012 IEP was reasonably calculated to enable C.M. to receive educational benefits.

On November 7, 2014, after reviewing the record, including testimony conducted in front of the IHO, the SRO issued an opinion sustaining the DOE's appeal and reversing the IHO's Decision.  The SRO found that the DOE had met its burden of demonstrating that it offered C.M. a FAPE for the 2011–2012 school year, and thus the SRO did not reach the second and third prongs of the *Burlington/Carter* analysis.  With respect to the adequacy of C.M.'s IEP, the SRO found that (i) the CSE relied on adequate evaluative information about C.M. to develop his IEP; (ii) the CSE's recommendation of a 12:1:1 special class program with related services was appropriately designed to enable C.M. to receive educational benefits; and (iii) the annual goals were appropriate and sufficiently addressed C.M.'s needs.  With respect to the CSE's placement

of C.M. at P.S. 198, the SRO held that (i) Plaintiffs could not prevail on claims that the assigned public school could not implement the IEP because, since C.M. did not enroll at P.S. 198, the claim was speculative; and (ii) even assuming that C.M. had attended P.S. 198, the evidence did not support a conclusion that the DOE would have deviated from C.M.'s IEP in a material or substantial way that would have denied C.M. a FAPE.

On March 4, 2015, Plaintiffs commenced this action to appeal the SRO Decision. Plaintiffs and the DOE filed cross-motions for summary judgment on August 13, 2015, and September 3, 2015, respectively.

## III.   STANDARD

A motion for summary judgment in the IDEA context is "in substance an appeal from an administrative determination, not a summary judgment [motion]." *M.H.*, 685 F.3d at 226 (citations and internal quotation marks omitted); *accord M.W.*, 725 F.3d at 138 ("Summary judgment in the IDEA context . . . is only a pragmatic procedural mechanism for reviewing administrative decisions.") (citation and internal quotation marks omitted).

In reviewing an SRO's decision, a district court determines whether the SRO's decision is supported by "the preponderance of the evidence, taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003). "When an IHO and the SRO reach conflicting conclusions, [a court generally] defer[s] to . . . the SRO's decision." *R.E.*, 694 F.3d at 189 (internal quotation marks, citation, and brackets omitted). However, the "factual findings must be 'reasoned and supported by the record' to warrant deference," *M.H.*, 685 F.3d at 241 (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 114 (2d Cir. 2007)), and, if an SRO's decision is not reasoned and supported by the record,

"a better-reasoned IHO opinion may be considered instead." *R.E.*, 694 F.3d at 189; s*ee also Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 218-19 (2d Cir. 2014). If an SRO decision does not reach a particular issue, but an IHO opinion does address that issue and is well reasoned and based on the record, the IHO opinion should be accorded deference. *See M.H.*, 685 F.3d at 252, 254 (affirming on appeal the district court's decision to defer to the IHO's conclusion that the school was an appropriate unilateral placement for the first plaintiff, and that the equitable considerations favored the first plaintiff, when the SRO did not reach those questions).

A district court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam) (alterations in original) (citation and internal quotation marks omitted). Accordingly, a federal court may not "substitute [its] own notions of sound educational policy for those of the school authorities." *M.W.*, 725 F.3d at 139 (citation and internal quotation marks omitted). "[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." *M.H.*, 685 F.3d at 244.

In deciding how much deference to accord the IHO and SRO, a reviewing court may take into account "whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *R.E.*, 694 F.3d at 189 (citation and internal quotation marks omitted). "The deference owed depends on both the quality of the opinion and the court's institutional competence." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (footnote omitted).

**IV.   DISCUSSION**

Plaintiffs are entitled to reimbursement of tuition they paid for the 2011-2012 academic year because, applying the *Burlington/Carter* test, the preponderance of the evidence (i) does not support the SRO's decision that C.M.'s IEP actually provided a FAPE; and does support the IHO's findings that (ii) Plaintiffs' placement of C.M. at the Aaron School was appropriate and (iii) the equities favor them.

**A. Defendant Has Not Shown that the IEP Actually Provided a FAPE**

"In determining whether an IEP complies with the IDEA, courts make a two-part inquiry that is, first, procedural, and second, substantive.  At the first step, courts examine whether there were procedural violations of the IDEA, namely, 'whether the state has complied with the procedures set forth in the IDEA.'"  *R.E.,* 694 F.3d at 189-90 (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005)).  For the substantive inquiry of the first prong of the *Burlington/Carter* test, courts "examine whether the IEP was substantively adequate, [by asking] whether it was 'reasonably calculated to enable the child to receive educational benefit[s].'"  *Id.* at 190 (quoting *Cerra*, 427 F.3d at 192) (quotation marks and citation omitted).  The DOE's development of C.M.'s IEP complied with the procedures set forth in the IDEA, but is substantively inadequate.

**i.   Procedural Inquiry**

Plaintiffs argue two procedural violations -- first, that the evaluative data before the CSE was insufficient; and second, that the IEP's goals were not adequately developed.  The SRO rejected both of these arguments, and that decision was well reasoned based on the record and is entitled to deference.

### a. Sufficiency of Evaluative Data

Plaintiffs argue that the CSE's failure to obtain or await an updated Psychological Evaluation ("updated P-E") of C.M. in developing the IEP for 2011-12 impeded C.M.'s right to a FAPE.  Plaintiffs argue four reasons that the evaluative data before the CSE was insufficient and necessitated an updated P-E: (1) that the CSE did not consider the 2008 P-E because it was outdated; (2) that changes in C.M.'s behavior observed by the DOE social worker "warranted" a reevaluation under applicable state and federal regulations; (3) that the DOE psychologist had requested a new psychological report; and (4) that the evaluative data that the CSE did consider was inadequate.  These arguments are either factually unfounded or legally incorrect.  The SRO correctly determined that the development of C.M.'s IEP was procedurally adequate.

A CSE is required to "review existing evaluation data on the child, including (i) evaluations and information provided by the parents of the child; (ii) current classroom-based, local, or State assessments, and classroom-based observations; and (iii) observations by teachers and related services providers."  20 U.S.C. § 1414(c)(1)(A).  New York State regulations required the CSE to review and consider "the results of the initial evaluation or most recent evaluation of the child."  20 U.S.C. § 1414(d)(3)(A)(iii); 8 N.Y.C.R.R. § 200.4(d)(2).  After reviewing the available evaluations, a CSE is required to "identify what additional data, if any, are needed to determine . . . whether any additions or modifications to the special education and related services are needed."  20 U.S.C.A. § 1414(c)(1)(B)(iv).  "[T]he CSE has the discretion to determine that no new evaluation is required."  *M.Z. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 4111, 2013 WL 1314992, at *8 (S.D.N.Y. Mar. 21, 2013) (citing § 1414(c)(4)); *see also E.E. v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 06709,  2014 WL 4332092, at *7 (S.D.N.Y. Aug. 21, 2014).  A reevaluation is required if "(i) the school district determines that one is warranted, (ii) the

student's parent or teacher requests one, or (iii) the evaluation in question is three years old or older." *E.E.*, No. 13 Civ. 06709,  2014 WL 4332092, at *7 (S.D.N.Y. Aug. 21, 2014) (citing 8 N.Y. C.R.R. § 200.4(b)(4)).

The CSE was not required to obtain or await an updated P-E to comply with the IDEA. The CSE relied on oral input from C.M.'s parents (the Plaintiffs) and teachers, as well as written classroom-based assessments and reports from the Aaron school.  The CSE also considered the 2008 P-E, which at the time of the CSE meeting was both the initial evaluation and the most recent evaluation.  The August 2008 P-E was not yet three years old.  The CSE convened in February, 2011, and neither C.M's parents nor teachers had requested an updated P-E for the CSE meeting.  Accordingly, the CSE properly exercised its discretion and determined that no new evaluation was needed.

Plaintiffs' argument that the CSE did not consider the 2008 P-E is factually incorrect. The parties' Joint Statement of Facts expressly states that "the CSE team reviewed and relied upon" the 2008 P-E, among other documents.  The DOE social worker testified that the school psychologist who was part of the CSE had looked at the 2008 P-E.

Plaintiffs' argument that the school psychologist requested an updated evaluation for the 2011 school year relies on a strained reading of the record -- i.e. that the DOE social worker, who testified about the psychologist's views at the CSE meeting, lied and changed her testimony for "self-serving reasons."  As the transcript makes clear, the social worker corrected herself to clarify that an updated evaluation would be needed for the 2012 school year when the 2008 P-E would be three years old, and not the 2011 school year:

> DOE ATTORNEY: Did the psychologist indicate that he would need to request or wanted to request an updated psychological for the 2011/2012 school year?
>
> SOCIAL WORKER: For the 2011/2012 school year, yes.

DOE ATTORNEY: For the current school year?

SOCIAL WORKER: For the following school year we would need a psychological.

DOE ATTORNEY: Okay, just so the record is clear though the school year we are discussing here today is the current school year, which is 2011/2012.

IHO: Did he want the psychological evaluation for this school year that we're in right now or for next school year 2012/2013?

SOCIAL WORKER: For the IEP for 2012/2013.

Although Plaintiff D.M. indicated that he "assumed" the updated P-E would be used for the 2011-2012 school year, he did not actually request an updated P-E for the 2011-2012 year. The school psychologist's and the CSE team's understanding was that an updated P-E would be used for the 2012-2013 school year, and not for the 2011-2012 school year.

The SRO's decision reviewed each of the documents that the CSE considered, describing each one and its conclusions about C.M. and her needs.  Based on this detailed review, the SRO concluded that the CSE had considered sufficient evaluative information.  This conclusion was well reasoned, based on the evidence and is entitled to deference.

### b.  Development of the IEP's Goals

Plaintiffs argue that C.M.'s 2011-2012 IEP goals were inappropriate and were not adequately developed because the IEP did not sufficiently describe what C.M.'s functioning needs would be in the 2011-2012 school year, and relied on teacher estimates from the 2010-2011 school year in developing the goals.  They argue that the progress C.M. made throughout the 2010-2011 school year rendered many of the IEP goals inappropriate and outdated in the 2011-2012 school year.  They also argue that the goals were generic and that the CSE did not provide a "baseline level of functioning for any of the goals."

The IHO found that the CSE did not review the goals from C.M.'s previous IEP during the meeting, and that there was no explanation offered for this omission.  It also found that a single counseling goal was insufficient to address C.M.'s social emotional needs.  The SRO disagreed and determined that the IEP team meaningfully considered C.M.'s 2010-2011 IEP during the meeting, that the 2010-2011 IEP was adequate to address C.M.'s social emotional needs, and that the 2011-2012 goals were appropriate.

The record supports the SRO's determination that the IEP goals were adequately developed and appropriate.  "[T]he sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers."  *Grim*, 346 F.3d at 382.  Because the SRO's determination regarding this issue was well-reasoned, it is entitled to deference.  *See id.*

 Contrary to Plaintiffs' argument that the goals were outdated during the 2011-2012 school year, the SRO found that both the parents and Aaron School teacher agreed the current goals were appropriate at the time.  [Admin Record p. 85, l. 7-11, and p. 883]  The SRO noted that the father testified that the CSE team "went through literally the math and literary goals from the report.  [The special education teacher] asked [the Aaron School teacher] if this [goal] was still relevant?  How is she performing?  And the team noted notes that reflected in the IEP based on the level that Charlotte was at."  [Admin Record p. 428-429, l. 25-5 (Father's testimony); p. 883 (SRO's opinion)].  The SRO found the goals "contained sufficient specificity . . . [to] evaluate the student's progress, and gauge the need for continuation or revision."  Specifically, the SRO found that the 2011-2012 goals would be measured over the course of the school year and that progress reports would address them.

The SRO correctly concluded that the goals were not generic because they "contain[ed] sufficient specificity" and that "any alleged deficiency due to the lack of 'baseline' data or grade levels did not preclude the student from the opportunity to receive educational benefits." *See R.B. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 421, 434 (S.D.N.Y. 2014) *aff'd sub nom. R.B. ex rel. D.B. v. New N.Y.C. Dep't of Educ.*, 603 F. App'x 36 (2d Cir. 2015) ("The Court is not persuaded . . . by Plaintiffs' protest that the goals in the IEP cannot be measured because they contain no 'baseline levels of functioning.'").

The SRO correctly determined that there were no procedural violations in the development of C.M.'s IEP.

### ii.     Substantive Inquiry

Plaintiffs correctly argue that the IEP recommendation that C.M. attend a *community* school in a 12:1:1 class with related services is substantively inadequate.  For the substantive inquiry of the first prong of *Burlington/Carter*, courts "examine whether the IEP was substantively adequate, [by asking] whether it was 'reasonably calculated to enable the child to receive educational benefit[s].'" *R.E.*, 694 F.3d at 190 (quoting *Cerra*, 427 F.3d at 192) (quotation marks and citation omitted).  The record supports the IHO's determination that the IEP recommendation of a community school was not reasonably calculated to enable C.M. to receive educational benefits.

Plaintiffs argue that the IEP's recommendation of a 12:1:1 class at a community school was not reasonably calculated to enable C.M. to receive educational benefits, because C.M. required a small class at a small *therapeutic* school to make educational progress.  The IHO accepted this argument.  The SRO did not squarely address it, but found that the IEP's recommendation was sufficient.

14

In his opinion, the SRO states that the minutes of the CSE meeting show that the CSE rejected as too restrictive a 12-month program in a special class in a special school, and therefore recommended a special class in a community school.  However, he cites no evaluative material to support the CSE determination and does not further discuss it.  His analysis focuses instead on the sufficiency of a 12:1:1 special class, but not the adequacy of C.M.'s attending a community school.

In contrast, the IHO correctly recognized that "the school" -- i.e., a community school rather than a small therapeutic school -- "was a critical [and misconceived] part of the [IEP] recommendation for this child."  The IHO discounts the testimony of the DOE social worker as to the possible benefit of a community school, with the observation that "there was no basis for her belief."  He cites in contrast the testimony of the psychologist who testified at the IHO hearing about C.M.'s need to attend "a small special education class and school" because she would have great difficulty negotiating school lunch and assemblies.  The same psychologist prepared the 2008 P-E which recommended "a small therapeutic school.  It is imperative that she not be placed in a large class or school."  No other material explicitly addresses C.M.'s needs regarding school size.

Where, as here, the IHO and SRO disagree and "the SRO's determinations are insufficiently reasoned to merit deference, the courts should defer to the IHO's analysis."  *C.F.*, 746 F.3d at 77.  "Additionally, the courts should defer to the IHO's analysis when considering an issue not reached by the SRO."  *Id.*  Applying these standards, the IHO's conclusion that the District failed to provide a FAPE for C.M. is entitled to deference.  *See id.*

Plaintiffs' challenge to the DOE's placement was not premature as the SRO found. Although "[s]peculation that [a] school district will not adequately adhere to [an] IEP is not an

appropriate basis for unilateral placement," *R.E.*, 694 F.3d at 195, Plaintiffs challenge the IEP itself and do not argue that P.S. 198 was unable to adhere to it.  C.M.'s IEP was not reasonably calculated to enable C.M. to receive educational benefits, and Defendant has failed to sustain its burden of showing that C.M.'s IEP actually provided a FAPE.

**B.  The Parents' Unilateral Placement Was Appropriate**

The second prong of the *Burlington/Carter* test requires Plaintiffs to establish that their unilateral placement of C.M. at the Aaron School was appropriate.  *M.W.*, 725 F.3d at 135.  The SRO did not reach this issue because he found for the DOE on the first prong.  The IHO found that the Aaron School is specifically tailored to meet C.M.'s unique needs because of its specially trained staff, multisensory approach, and cross-curricular program, and concluded that the Aaron School was an appropriate placement for C.M.  Because the SRO did not reach this issue, and because the IHO's opinion is reasoned and relates to questions of educational policy that require expertise, the Court defers to the IHO's decision.  *See C.F.*, 746 F.3d at 77 ("[T]he courts should defer to the IHO's analysis when considering an issue not reached by the SRO.") (citation omitted).  Moreover, Defendant did not address this issue and is deemed to have conceded it.  *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned.").

**C.  The Equities Weigh in Favor of Reimbursement**

Likewise, the SRO and Defendant did not discuss the third prong of *Burlington/Carter*, which requires plaintiffs to establish that they are favored by the equities.  *M.W.*, 725 F.3d at 135.  The IHO concluded that the equities weigh in favor of reimbursement.  Again the Court

defers to the IHO's decision, *see C.F.*, 746 F.3d at 77, and Defendant is deemed to have concluded the issue.

Where, as here, a student is denied a FAPE, reimbursement is an appropriate remedy. *See M.W.*, 725 F.3d at 135.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED, and Defendant's cross-motion for summary judgment is DENIED.  The Clerk is directed to close the motions at Docket Nos. 26 and 28 and to close the case.

The Clerk of the Court is directed to close the motions at Docket Nos. 26 and 28.


New York, New York
January 26, 2016

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

17